Willie G. PEARSON, Vandy Hawkins, Sylvester Williams, William Waters, Bogus Knight, Charles Temple, Narcisse Batiste, Melvin King, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

FURNCO CONSTRUCTION COMPANY, a corporation, Peter J. Brennan, Secretary, U. S. Department of Labor, and Bricklayers, Masons and Plasterers International Union of America, an unincorporated association, Defendants-Appellees.

BRICKLAYERS, MASONS, AND PLASTERERS INTERNATIONAL UNION OF AMERICA, an unincorporated association, Defendant-Appellee, Cross-Appellant,

v.

Willie G. PEARSON, Vandy Hawkins, Sylvester Williams, William Waters, Bogus Knight, Charles Temple, Narcisse Batiste, Melvin King, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants, Cross-Appellees.

Nos. 75–1723, 75–1724.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1976.

Decided Aug. 25, 1977.

Judson H. Miner, Chicago, Ill., for Pearson.

Richard E. Lieberman, Joel H. Kaplan, Marvin Gittler, Lester Asher, Chicago, Ill., Carl W. Gerig, Jr., and James E. Cradock, Washington, D. C., for Furnco.

Richard L. Kieser, U. S. Atty., Fort Wayne, Ind., Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., Herman Grant, Dept. of Labor, Chicago, Ill., Joseph J. Spencer, U. S. Dept. of Labor, Washington, D. C., for Peter J. Brennan.

Lutz A. Prager, Mollie W. Neal, Charles L. Reischel, Beatrice Rosenberg, Joseph T. Eddins, Abner W. Sibal, E. E. O. C., Washington, D. C., for amicus curiae.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and HOFFMAN, Senior District Judge.[*]

FAIRCHILD, Chief Judge.

Plaintiffs' complaint, filed September 30, 1974, was dismissed on motion. Plaintiffs proposed an amended complaint and sought reconsideration. The district court dismissed the amended complaint, and plaintiffs appealed. Thus the facts, for purposes of this appeal, appear from the amended complaint (except for certain additional submissions). Although brought as a class action, it does not appear to have been ordered to be maintained as such, and thus we consider only the claims of the named plaintiffs.

## I. THE CASE AGAINST FURNCO

Plaintiffs are eight black bricklayers who reside in Chicago. Each has substantial experience in the craft. Furnco is a mason contractor with headquarters at Buffalo, New York. In the period 1969–74 Furnco performed a number of firebrick jobs on blast furnaces in the greater Chicago area, including northern Indiana.

During the summer of 1973, Furnco performed a job at Inland Steel Corporation, in East Chicago, Indiana. A portion of the workforce employed by Furnco on that job consisted of seventeen white Canadian bricklayers, employed after Furnco sought and obtained permission for them to enter the United States as non-immigrants for temporary work. In order to obtain such permission, the Secretary of Labor must certify qualified persons in the United States are not available. In order to obtain the certification, Furnco represented that it had been unable to find any qualified bricklayers to perform the work.

At this time, plaintiffs were available and qualified, and would have accepted the employment if offered.

The district court decided that plaintiffs lacked standing to complain because none of them had applied to Furnco for work on the Inland job.

Plaintiffs do not claim they had so applied. They had, however, sought employment at numerous other jobs performed by Furnco in Chicago and northern Indiana. They sought employment by going to the respective sites and leaving their names, addresses and telephone numbers with representatives of the company. Some of them wrote letters to Furnco, advising of their availability.

Some of the plaintiffs had taken other action which necessarily made known to Furnco their availability and qualifications. Present plaintiff Batiste and others brought an action against Furnco in the Northern District of Illinois March 11, 1971. The action was based upon an allegedly discriminatory denial of employment in 1969. *Batiste v. Furnco Construction Corporation*, 350 F.Supp. 10 (N.D.Ill.1972), *reversed* 503

[*] Senior District Judge Julius J. Hoffman of the Northern District of Illinois is sitting by designation.

F.2d 447 (7th Cir. 1974). Present plaintiffs Pearson, Hawkins, Williams, Waters, and others brought a similar action September 15, 1972. It was based on alleged discrimination in 1971. Present plaintiffs Pearson, Hawkins, and Williams were ultimately hired on that job, although Pearson and Hawkins were fired. *Waters v. Furnco Construction Corporation*, 551 F.2d 1085 (7th Cir. 1977).

Plaintiffs alleged that Furnco "concealed" the Inland job from them. No details of active concealment are described. Thus the claim of concealment adds little more than emphasis to the claim which is adequately disclosed elsewhere, *i. e.*, that plaintiffs had made Furnco sufficiently aware of their interest in firebrick jobs so that Furnco's failure to notify them of the Inland job, coupled with Furnco's representation of inability to find qualified bricklayers, could only have been a deliberate avoidance of considering plaintiffs for employment.

Furnco and the district court proceeded on the theory that plaintiffs' inability to show they had applied for the Inland job established they had suffered no actual injury and had no standing to complain. We think, however, that these plaintiffs alleged a sufficient demonstration of interest in employment, which they brought to the attention of Furnco, so that it is fair and reasonable to treat plaintiffs as applicants for the Inland job if they can show, as they alleged, that they were available and would have applied if they had been made aware of the job. *See, International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 363, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Such proof would adequately demonstrate injury to plaintiffs and entitle them, under the circumstances, to the inference of discrimination recognized in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) assuming plaintiffs can prove their qualifications.

■ Putting the matter another way, plaintiffs have alleged a particular demonstrable relationship between themselves and Furnco, so that Furnco's failure to notify plaintiffs of the Inland job could be found tantamount to refusal to employ them.

■ With respect to the allegation that some of plaintiffs had advised Furnco by letter of their availability, Furnco points to an affidavit asserting that a search of Furnco's files showed only a letter from Waters, and that sought only a specific position, other than Inland, in 1971. We do not view this affidavit as conclusively establishing that no other letters were received, nor do we regard the letters as essential to establish the type of awareness claimed by plaintiffs, given the other alleged circumstances.

## II. TIMELINESS OF ACTION BASED ON TITLE VII

Plaintiffs base their claim both on 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court deemed the action untimely under Title VII.

The amended complaint alleged receipt of the EEOC right-to-sue letters on July 1, 1974. The action was begun September 30, a Monday. The ninetieth calendar day after July 1 was Sunday, September 29. Thus the action was not brought within 90 days after receipt of notice from the Commission if Sunday, September 29 is counted as the ninetieth day for the purpose of 42 U.S.C. § 2000e–5(f)(1).

The Equal Employment Opportunity Commission, as *amicus*, urges that the statute should be interpreted in conformity with the rules governing time limitations in civil actions, Rule 6(a), Fed.Rule Civ.P. (*Cf.* Rule 26(a), F.R.A.P.; Rule 45(a), Fed.Rule Crim.P.; Rule 34, Rules of the Supreme Court). Under that rule the last day of a period of time is not to be included if it is a Saturday, Sunday, or legal holiday.

■ Although the procedural rule does not directly apply to a statute of limitations, courts have at times invoked the principle of the rule as a matter of interpretation. 2 Moore's Federal Practice ¶ 6.06[2]. *See also, Nagatoshi v. Ex-Cello Corp.*, 282

F.2d 380, 381 (7th Cir. 1960). We think that in the light of the purposes intended to be served by Title VII, it is a sound interpretation of congressional intent that the party plaintiff is to have a full span of ninety days in which to file his action, and that accordingly, when the ninetieth calendar day is a Saturday, Sunday, or holiday, the period does not expire until the end of the next day which is none of these three.

Accordingly, plaintiffs' action should be treated as predicated upon Title VII as well as § 1981.

## III. THE CASE AGAINST THE INTERNATIONAL UNION

Defendant Bricklayers, Masons and Plasterers International Union of America is a labor organization representing bricklayers employed throughout the United States. Plaintiffs allege that the Union "wrote defendant Secretary that there were no bricklayers available for employment by defendant Furnco" and allege that the Union made no investigation to determine whether the statement was accurate.

Plaintiffs did not allege that the Union had any direct relationship with them nor awareness of them. The only suggestion of a link between the Union and the wrong allegedly done plaintiffs is found in allegations that the Union's letter was "in support of the Furnco application" and that "Defendants [Furnco, Secretary of Labor, and the Union] have intentionally engaged in unlawful employment practices toward plaintiffs and all others similarly situated by conspiring to prevent them from gaining employment."

■ The Union's first contention is that the district court did not have personal jurisdiction over it. Service was made by registered mail delivered to the Union in Washington, D. C. and possibly by delivery in person to an officer there. The Union has its headquarters there, and has no office in Indiana. There is a local body in Indiana (and apparently a summons was delivered to one of its officers). The Union certainly has some relationship with its members in Indiana, and presumably has dealings from time to time with employers there. The claim of liability is predicated upon the mailing of a letter in Washington to the Secretary of Labor, representing (without investigation) that workers were not available for an Indiana project.

The district court asserted jurisdiction, citing *Valdez v. Ford, Bacon and Davis, Texas, Inc.*, 62 F.R.D. 7 (N.D.Ind.1974). Citation of that case indicates that the district court relied on Indiana Trial Rule 4.4, authorizing extra-territorial service on a long-arm theory.

Presumably the district court recognized that the Union maintained relationships with its Local, its members, and employers in Indiana, and that such relationships gave credence to the Union's assertion as to the availability of bricklayers for a project in Indiana. The claim is that plaintiffs were damaged as a result of the assertion, allegedly untrue, and made without investigation. Although the question is close, we can agree with the district court that the Union's contacts with Indiana were sufficient for extra-territorial service where the claim was as related to those contacts as appears here. *See, Indiana Rules of Trial Procedure*, Rule TR 4.4(A)(3). The Union was served in a manner sufficient to inform it of this lawsuit and the Union's contacts with Indiana appear to attain the minimums required for due process. *See International Shoe v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1946). *Cf. Shaffer v. Heitner*, —— U.S. ——, ——, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

■ Reaching the merits, we affirm dismissal as to the Union. The gist of plaintiffs' claim against Furnco is, as already indicated, that Furnco's awareness of plaintiffs' desire for employment, assuming plaintiffs are qualified, established, *prima facie*, that Furnco discriminated on account of race when it sought out and hired white employees. Although the Union helped Furnco recruit the latter, there is no allegation charging the Union with any knowledge of or dealings with plaintiffs. In the circumstances disclosed, the pejorative

characterizations of "in support of," "intentionally," and "conspiring," without further explanation of substance, are not adequate notice of a claim that the Union shared Furnco's awareness of plaintiffs or had any duty to seek them out.

## IV. THE CASE AGAINST THE SECRETARY OF LABOR

The amended complaint alleged that the Secretary made no investigation to determine the availability of bricklayers, and, as noted with respect to the Union, charged all defendants with "intentionally" engaging in unlawful employment practices and with "conspiring" against their employment.

The Secretary moved to dismiss, and also for summary judgment.

As pointed out by the Secretary, the function performed by him was authorized by a statute and regulation. 8 U.S.C. § 1184(c) provides in part that "the question of importing any alien as a non-immigrant under section 1101(a)(15)(h) . . . shall be determined by the Attorney General, after consultation with appropriate agencies of the government . . . ." The Attorney General has issued a regulation, 8 C.F.R. 214.2(h), which provides that petitions to INS for visas for such employment must be accompanied by a certification by the Secretary of Labor that "qualified persons in the United States are not available and that employment will not adversely affect the wages and working conditions of workers in the United States similarly employed, or a notice that such certification cannot be made."

The Secretary has issued regulations at 20 C.F.R. 621 providing that his designated representative will issue a certification if he finds the facts required to be certified.

The Secretary points out that there is no claim that an EEOC right-to-sue letter was issued with respect to the Secretary. Sovereign immunity is also claimed. Aside from those defenses, it is our opinion that, as concluded with respect to the Union, the amended complaint states no cause of action against the Secretary grounded upon Title VII or § 1981.

Assuming, without deciding, that plaintiffs could obtain judicial review of the Secretary's action, and overlooking the question of mootness after completion of the project, we reach the Secretary's motion for summary judgment. The administrative record shows that Furnco's application stated that Furnco had contacted 23 different Union business agents in an attempt to obtain bricklayers for the Inland job. The Department made inquiries of the Union and of the East Chicago Office of the Indiana State Employment service. No identifiable bricklayers were found to be available.

Conceivably additional inquires might have been made, and plaintiffs or other available bricklayers might have been located. We conclude, however, that the extent of the information on which the Department acted did not render its certification "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Seo. v. United States Department of Labor*, 523 F.2d 10 (9th Cir. 1975); *Secretary of Labor v. Farino*, 490 F.2d 885, 889–90 (7th Cir. 1973).

The judgment appealed from is reversed insofar as it dismissed the amended complaint against Furnco, and the cause is remanded for further proceedings. In all other respects the judgment is affirmed. Costs are awarded to plaintiffs against Furnco (except for Reply Brief and Answering Brief on cross appeal), and to the Secretary against plaintiffs. No costs are awarded to or against the Union. Pages A–18 through A–22 of Appendix to plaintiffs' reply brief have not been considered, and, upon the Union's motion, are struck.